# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| SPARKLES GIFT & PARTY SHOP,<br>INC., and STOCK YOUR HOME, LLC,<br><br>        Plaintiffs,<br><br>vs.<br><br>CONTINENTAL CASUALTY COMPANY,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-01367<br><br>Honorable John F. Kness<br><br>*Filed concurrently with Statement of<br>Undisputed Material Facts and<br>Declaration of Eckhaus* |

## MOTION FOR PARTIAL SUMMARY JUDGMENT

314004_16.docx-4/23/2025 2:48 PM

## TABLE OF CONTENTS

**Page**

I.     PRELIMINARY STATEMENT ................................................................1

    A.     Summary of Argument.............................................................1

    B.     Illinois Choice Of Rules Require The Application Of Illinois Law.................3

II.     IMPLICIT DISPARAGEMENT FOR OFFENSE "d" IS ALLEGED ........................4

    A.     "Oral Or Written Publication".....................................................4

    B.     "Disparagement"..................................................................4

III.     USE IS COVERED FOR TRADEMARKED "ADVERTISING IDEA" ....................6

    A.     "Use of Another's Advertising Idea" .............................................6

    B.     "In Your 'Advertisement'"........................................................8

IV.     SLOGAN INFRINGEMENT OFFENSE (g) IS READILY IMPLICATED ...............9

    A.     "RESTAURANTWARE" Is A Slogan..............................................9

    B.     In Your "Advertisement" .........................................................10

V.     THE FOUR EXCLUSIONS CNA CITES ARE INAPPLICABLE ............................11

    A.     "Arising Out of" Exclusionary Language Is Narrowly Construed.................11

    B.     "Intellectual Property"............................................................11

    C.     "Failure to Conform" .............................................................12

    D.     "Knowledge of Falsity"...........................................................13

    E.     "Knowing Violation" .............................................................14

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Advance Watch Co., Ltd. v. Kemper National Ins. Co.*,
99 F.3d 795 (6th Cir. (Mich.) 1996) ...................................................................................7

*Allied Ins. Co. v. Bach*,
No. 05 C 5945, 2007 WL 627635 (N.D. Ill. Feb. 27, 2007)......................................11, 14, 15

*Am. Simmental Ass'n v. Coregis Ins. Co.*,
282 F.3d 582 (8th Cir. (Neb.) 2002) ...................................................................................7

*American Home Assur. Co. v. United Space Alliance, LLC*,
378 F.3d 482 (5th Cir. (Tex.) 2004)...................................................................................14

*Atlapac Trading Co., Inc. v. Am. Motorists Ins. Co.*,
No. CV 97-0781, 1997 U.S. Dist. LEXIS 21943 (C.D. Cal. Sept. 23, 1997)...........................7

*Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*,
876 F. Supp. 2d 1005 (N.D. Ill. 2012) ...............................................................................14

*CGS Indus. v. Charter Oak Fire Ins. Co.*,
720 F.3d 71 (2d Cir. (N.Y.) 2013) ...................................................................................2, 15

*Cincinnati Ins. Co. v. E. Atl. Ins. Co.*,
260 F.3d 742 (7th Cir. (Ill.) 2001) .....................................................................................13

*Cincinnati Ins. Co. v. Zen Design Grp., Ltd.*,
329 F.3d 546 (6th Cir. (Mich.) 2003) .......................................................................2, 9, 10, 13

*Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*,
No. CIV.A. 06 C 1658, 2006 WL 2331144 (N.D. Ill. Aug. 8, 2006), *aff'd*, 500
F.3d 640 (7th Cir. (Ill.) 2007) .......................................................................................2, 4, 5

*Fantasia Accessories, Ltd. v. N. Assurance Co. of Am.*,
01 CIV. 663 (AGS), 2001 U.S. Dist. LEXIS 18865 (S.D.N.Y. Nov. 20, 2001) .......................6

*Flodine v. State Farm Ins. Co.*,
No. 99 C 7466, 2001 WL 204786 (N.D. Ill. Mar. 1, 2001) ...............................................7, 12

*Flodine v. State Farm Ins. Co.*,
No. 99 C 7466, 2003 WL 1394977 (N.D. Ill. (E. Div.) Mar. 18, 2003) ..................................2

*Gen. Elec. Co. v. Sargent & Lundy*,
916 F.2d 1119 (6th Cir. (Ky.) 1990)...................................................................................4

*Hudson Ins. Co. v. Colony Ins. Co.*,
624 F.3d 1264 (9th Cir. (Cal.) 2010) ....................................................................2, 9, 10, 11

*Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*,
600 F.3d 1092 (9th Cir. (Cal.) 2010) ....................................................................6

*Maxum Indem. Co. v. Certified Elec. Testing, Inc.*,
No. 10-CV-681-MJR-DGW, 2011 WL 13234719 (S.D. Ill. Sept. 29, 2011)............................3

*MGA Ent., Inc. v. Hartford Ins. Grp.*,
No. EDCV080457DOCRNBX, 2012 WL 12893266 (C.D. Cal. Feb. 24, 2012) .............11, 12

*My Choice Software, LLC v. Travelers Cas. Ins. Co. of Am.*,
823 F. App'x 510 (9th Cir. (Cal.) 2020) ................................................................11

*Nat'l Fire Ins. Co. v. E. Mishan & Sons, Inc.*,
650 Fed. App'x 793 (2d Cir. (N.Y.) 2016) ................................................................15

*Ohio Cas. Ins. Co. v. Albers Med.*,
No. 03-1037-CV-W-ODS, 2005 U.S. Dist. LEXIS 45675 (W.D. Mo. Sep. 22, 2005) ....................................................................6, 8

*Old Guard Ins. Co. v. Saoirse Homes, LLC*,
No. 3:22-CV-50413, 2023 WL 7630372 (N.D. Ill. Nov. 14, 2023) ..........................................1

*PCB Piezotronics, Inc. v. Kistler Instrument Corp.*,
96-CV-0512E(F), 1997 U.S. Dist. LEXIS 20783 (W.D.N.Y. Dec. 30, 1997) ..........................4

*Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp.*,
No. 8:05CV315, 2007 WL 1290138 (D. Neb. Mar. 12, 2007).................................................13

*Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*,
611 F.3d 339 (7th Cir. (Ill.) 2010) .......................................................................9, 12

*Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*,
No. 04 C 1342, 2004 U.S. Dist. LEXIS 14760 (N.D. Ill. 2004)...........................................12

*Travelers Indem. Co. v. Sterling Wholesale, LLC*,
No. 2:12cv156, 2013 U.S. Dist. LEXIS 102223 (E.D. Va. July 19, 2013) ............................10

*Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.*,
No. 02 CV 675 (LLS), 2002 WL 31528474 (S.D.N.Y. July 15, 2002)..................................10

*Utica Mutual Ins. Co. v. David Agency Ins., Inc.*,
327 F. Supp. 2d 922 (N.D. Ill. (E. Div.) 2004) ...................................................................13

*Vitamin Energy, LLC v. Evanston Ins. Co.*,
22 F.4th 386 (3d Cir. (Pa.) 2022).................................................................11, 12, 13

314004_16.docx-4/23/2025 2:48 PM

iii

**State Cases**

*Costello v. Liberty Mut. Fire Ins. Co.*,
376 Ill. App. 3d 235, 876 N.E.2d 115 (2007) ...........................................................................3

*Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*,
319 Ill. App. 3d 218 (2001) ......................................................................................................3

*Gen. Cas Co. v. Wozniak Travel, Inc.*,
762 N.W.2d 572 (Minn. 2009).........................................................................................7, 8, 9

*Intact Ins. Co. v. Comptoir Des Indes, Inc.*,
Case No. 2019 CH 1308 (Ill. Ch. Mar. 14, 2021)...................................................................14

*Johnson Press of America, Inc. v. Northern Ins. Co. of New York*,
339 Ill. App. 3d 864 (2003) ....................................................................................................11

*Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am .*,
2020 IL App (1st) 182491 (Apr. 7, 2020)..................................................................................4

*Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.*,
166 Ill. 2d 520, *as modified on denial of reh'g* (Oct. 2, 1995) ..................................................3

*Miranda v. California Cap. Ins. Co.*,
No. A126778, 2011 WL 1168064 (Cal. Ct. App. Mar. 29, 2011) .............................................5

*Morris B. Chapman & Assoc., Ltd. v. Kitzman*,
307 Ill. App. 3d 92 (5th Dist. 1999)..........................................................................................3

*Soc'y of Mount Carmel v. Nat'l Ben Franklin Ins. Co. of Illinois*,
268 Ill. App. 3d 655 (1994) ......................................................................................................4

*Squire v. Economy Fire & Casualty Co.*,
69 Ill. 2d 167 (1977) .................................................................................................................1

*State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC*,
364 Ill. App. 3d 946 (2006) ......................................................................................................2

*Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc.*,
2011 IL App (1st) 101723, 963 N.E.2d 930 .............................................................................3

*West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*,
385 Wis. 2d 580 (2019) ..........................................................................................................14

*Xerox Corp. v. Travelers Cas. & Sur. Co. of Am.*,
225 A.D.3d 510 (2024) ...........................................................................................................11

**Federal Statutes**

15 U.S.C. § 1125(A) ..............................................................................................................14

**State Statutes**

Illinois Consumer Protection Act, 815 ILCS 505/2.................................................................1, 8

Illinois Deceptive Trade Practices Act, 815 ILCS 510/2.........................................................1, 7

**Other Authorities**

https://en.wikipedia.org/wiki/Restaurant_ware ......................................................................9, 10

Restatement (Second) of Torts § 630 (1977)................................................................................4

I.      PRELIMINARY STATEMENT

A.      Summary of Argument

Defendant Continental Insurance Company ("CNA") improperly denied a defense for Sparkles Gift & Party Shop, Inc. ("Sparkles") by failing to consider any specific allegations, in the Complaint and First Amended Complaint ("FAC") in the action styled as *RBG Plastic, LLC v. Sparkles Gift & Party Shop, Inc. et al.*, Case No. 1:24-CV-02155, in the United States District Court for the Northern District of Illinois, Eastern Division ("RBG Action"), under "advertising injury" coverage for offenses "d" "disparagement," "f" "advertising idea" use, and "g" "infringement" of "slogan" in Sparkles' "advertisement." [SUF ¶¶ 17-18] It also failed to take into account the breadth of the "arising out of" policy language that precluded those referenced offenses, implicating potential coverage under applicable Illinois law.[1] [SUF ¶¶ 17-18, 22-26]

In Count IV, RBG alleges implicit disparagement by asserting that after consumers bought Sparkles' products, under the impression that the products are affiliated with RBG's brand because of the use of the "RESTAURANTWARE" mark. [SUF ¶¶ 30-31] Consumers will be disappointed by the inferior quality of Sparkles products. [SUF ¶¶ 30-31] In Count IV, Sparkles' advertisements create a "likelihood of injury to RBG's business reputation," implicating potential coverage under offense "d" for "disparagement" because consumers may "believe that RBG is affiliated with or related to or has the approval of defendant, and any adverse reaction by the public to defendant and the quality of its products and the nature of its business will injure the business reputation of RBG and the good will that it enjoys in connection with its mark 'RESTAURANTWARE'" whether or not that term is enforceable solely as a trademark. [SUF ¶¶ 30-31] CNA's denial ignores that claims under the common law are not limited to trademark infringement. [SUF ¶¶ 17-18] RBG relied on allegations under the Illinois Consumer Protection Act, 815 ILCS 505/2, Illinois

_____

[1] *Old Guard Ins. Co. v. Saoirse Homes, LLC*, No. 3:22-CV-50413, 2023 WL 7630372, at *4 (N.D. Ill. Nov. 14, 2023) ("The LLC defendants have pleaded sufficient factual matter . . . to fall clearly within the coverage for advertising injury stemming from copyright infringement, and to clearly fall clearly outside the putatively relevant exclusion, which explicitly carves out copyright infringement in advertising."); *Squire v. Economy Fire & Casualty Co.*, 69 Ill. 2d 167, 180 (1977) (Holding ambiguous provisions or equivocal expressions whereby an insurer seeks to limit liability will be construed in favor of the insured.).

Deceptive Trade Practices Act, 815 ILCS 510/2, and common law injury for business reputation. [SUF ¶ 15] The claims asserted therein are analogous to those asserted in *Del Monte*, alleging injury "arising out of" violation of the statutes, "injur[ing] [RBG's] business reputation."[2]

Sparkles' alleged marketing of "RESTAURANTWARE" and/or "RESTAURANT-WARE" implicated potential coverage under offense "f" for "use of another's advertising idea" evidencing claims that a false "description or representation" of its goods as analogous to those of its competitor's.[3] [SUF ¶¶ 24, 38] This allegation asserts claims that allegedly also reveal a possibility that the injury "originat[ed] from" or "ha[s] connection with" Sparkles' decision to market its products in a way highlighting its products.[4]

It is of no matter that RBG did not refer to "RESTAURANTWARE" and/or "RESTAURANT-WARE" as a slogan under offense "g" of the Policy in the Complaint.[5] No cause of action for slogan infringement need be asserted. Sparkles' use of "RESTAURANTWARE" as a phrase promoting a particular type of restaurant goods and services functions as a "slogan," and whether a covered "trademarked slogan" or not it evidences unfair competition based on use of RBG's slogan.[6] [See Sections II, III, IV, and V, B-E] [SUF ¶¶ 49-54]

Nor do any of the four referenced exclusions, whose applicability CNA fails to establish, meet its burden of proof to prove as each depends on proof of facts unrelated to establishing liability for each of the asserted offenses. [See Sections II, III, IV, and V] [SUF ¶¶ 11, 55-64]

---

[2] *Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.,* No. CIV.A. 06 C 1658, 2006 WL 2331144, at *7 (N.D. Ill. Aug. 8, 2006), *aff'd,* 500 F.3d 640, 645 (7th Cir. (Ill.) 2007).

[3] *Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2003 WL 1394977, at *6 (N.D. Ill. (E. Div.) Mar. 18, 2003) ("Flodine's marketing and selling of her products as Indian-made, i.e., the advertising of her products . . .'[T]he alleged breach [of contract] arose out of Flodine's false labeling and misrepresentation of the nature and origin of her goods (the advertising injury)[.]' ").

[4] *State Auto. Mut. Ins. Co. v. Kingsport Dev., LLC* , 364 Ill. App. 3d 946, 953 (2006) ("[B]ecause the phrase ' **arising out of** ' has been held to **mean** 'originating from,' 'having its origin in,' 'growing out of,' and 'flowing from,' the phrase ' **arising out of'** 'is both **broad** and vague, and must be liberally construed in favor of the insured; accordingly 'but for' causation, not necessarily proximate causation, satisfies this language.' [citation].") (emphasis added).

[5] *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1268-69 (9th Cir. (Cal.) 2010) (citing *Cincinnati Ins. Co. v. Zen Design Grp., Ltd.,* 329 F.3d 546, 554-56 (6th Cir. (Mich.) 2003) ("[I]t does not matter that the NFL complaint never referred to "steel curtain" as a slogan and never listed slogan infringement as a cause of action.").

[6] *See CGS Indus. v. Charter Oak Fire Ins. Co.*, 720 F.3d 71, 78 n. 5 (2d Cir. (N.Y.) 2013).

314004_16.docx-4/23/2025 2:48 PM

**B.      Illinois Choice Of Rules Require The Application Of Illinois Law**

Absent a conflict of law, which does not arise here for the pertinent coverage issues as between Illinois and New York[7], the law of the forum, Illinois, applies.[8] "Under Illinois choice-of-law rules, 'insurance policy provisions are generally governed by the **location of the subject matter** [claimant RBG's principal place of business is in Illinois, and where injury arose creating asserted liability under three distinct Illinois statutory claims], the place of delivery of the contract, **the domicile of the** insured or of the **insurer** [Chicago, Illinois], the place of the last act to give rise to a valid contract**,** the **place of performance [**Defense due in federal court, RBG Action in N.D. Illinois], or other place bearing a rational relationship to the general contract.'"[9] [SUF ¶¶ 1, 4-5] Those elements highlighted above support the application of Illinois law for potential coverage under disparagement "d," "advertising idea" "f," and slogan infringement "g" offenses on any legal issue.[10] Absent a conflict of law, the law of the forum applies.[11] [SUF ¶¶ 1, 4-5]

A fair assessment of these elements in light of Illinois choice of law rules would find that if there is a conflict, Illinois law would apply where, as here, the alleged liability arises from problematic allegations that caused injury was in a single state whose citizens, rights, and statutes were allegedly violated "the location of the insured risk has often been given special weight, "'provided that the risk can be located, at least principally in a single state.'[12] Here, the insured

---

[7] *Morris B. Chapman & Assoc., Ltd. v. Kitzman*, 307 Ill. App. 3d 92, 101 (5th Dist. 1999) (The initial step in a conflict of law analysis is to detect whether a conflict exists between the forum state's law and another state's law that may be applicable.)

[8] *Costello v. Liberty Mut. Fire Ins. Co.*, 376 Ill. App. 3d 235, 240, 876 N.E.2d 115, 120 (2007) ("In the absence of a choice of law provision in an agreement, the general choice of law rules of the forum state clearly control.").

[9] *Id.* (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 166 Ill. 2d 520, 526–27, *as modified on denial of reh'g* (Oct. 2, 1995)) (emphasis added).

[10] *Emerson Elec. Co. v. Aetna Cas. & Sur. Co.*, 319 Ill. App. 3d 218, 232 (2001) (citing *Lapham-Hickey Steel Corp. v. Prot. Mut. Ins. Co.,* 166 Ill. 2d 520, 526–27, *as modified on denial of reh'g* (Oct. 2, 1995)).

[11] *Universal Underwriters Ins. Co. v. LKQ Smart Parts, Inc*., 2011 IL App (1st) 101723, ¶ 47, 963 N.E.2d 930, 946-48 ("We conclude that there is no conflict between Wisconsin and Illinois law as to the interpretation of the provisions in the policy here. We therefore must apply the law of Illinois as the law of the forum. ").

[12] *Maxum Indem. Co. v. Certified Elec. Testing, Inc*., No. 10-CV-681-MJR-DGW, 2011 WL 13234719, at *3 (S.D. Ill. Sept. 29, 2011).

314004_16.docx-4/23/2025 2:48 PM

3

risk is Illinois for violation of Illinois statutes allegedly violating the rights of Illinois citizens.[13] [SUF ¶¶ 4-5]

## II.     IMPLICIT DISPARAGEMENT FOR OFFENSE "d" IS ALLEGED

### A.     "Oral Or Written Publication"

Sparkles' advertisements readily meets any definition of "publication." A number of courts have concluded that a publication can injure another's reputation so long as it is disseminated to more than one person, which is also true of defamation as of disparagement.[14] Sparkles uses the term "RESTAURANTWARE" and/or "RESTAURANT-WARE" in its "online advertising." [SUF ¶¶ 10, 27-28]

### B.     "Disparagement"

Disparagement, as a labeled claim for relief, need not be expressly alleged.[15] No specific tort or express allegation of disparagement is required by the Policy.[16] [SUF ¶¶ 10, 32] Implicit disparagement is implicated here by: (1) indirect injury to consumers from disparagement of RBG products as consumers will purchase Sparkles' goods expecting RBG quality; and (2) "injur[y] [to] the business reputation of RBG and the good will that it enjoys in connection with its mark 'RESTAURANTWARE'." [SUF ¶¶ 29-33]

*Del Monte* addressed one of the offenses at issue here and concluded that disparagement arose from the negative comparative inferences arising out of the insureds promotional claims

---

[13] *Soc'y of Mount Carmel v. Nat'l Ben Franklin Ins. Co. of Illinois*, 268 Ill. App. 3d 655, 665 (1994) (under Illinois choice of law factors, California law applied and the insured risk was located in California where "the underlying plaintiff was a California resident and the underlying action was brought in a California court against defendants who were predominately domiciled in California.").

[14] *Gen. Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1124 n.1 (6th Cir. (Ky.) 1990) (citing Restatement (Second) of Torts § 630 (1977)).

[15] *Joseph T. Ryerson & Son, Inc. v. Travelers Indem. Co. of Am .,* 2020 IL App (1st) 182491, ¶ 34 (Apr. 7, 2020) ("We give little weight to the legal label that characterizes the underlying allegations. Instead, we determine whether the alleged conduct arguably falls within at least one of the categories of wrongdoing listed in the policy. [citation] The duty to defend does not require that the complaint allege or use language affirmatively bringing the claims within the scope of the policy. [citation] The question of coverage does not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action.").

[16] *PCB Piezotronics, Inc. v. Kistler Instrument Corp.,* 96-CV-0512E(F), 1997 U.S. Dist. LEXIS 20783, *9 (W.D.N.Y. Dec. 30, 1997) (applying Illinois law) (holding that the policy's "disparagement" offense has no "specialized legal meaning" and should be construed according to its dictionary definition, or "ordinary meaning").

314004_16.docx-4/23/2025 2:48 PM

about its own products because they implicitly disparaged those of its competitors. [17] "**Del Monte told customers that it was the only company authorized to market extra-sweet pineapples**. . . . Viewed liberally, Del Monte's alleged efforts to publicly disparage its competitors' pineapples inevitably promoted its extra-sweet pineapples." *Id.* So here, Sparkles' use of "RESTAURANTWARE" in promoting its products in the same channels of commerce as RBG caused negative comparative inferences hurting to RBG's goodwill and reputation. [SUF ¶¶ 30-33]

In a directly analogous case, *Miranda*, the court held it is enough emphasize the allegedly falsely inflated value of its own products and allow consumers to draw their own conclusions, which is exactly what happened here.[18] Despite lack of any express statement about Christie's herd or claim that it had inferior cows, "[t]he complaint alleged that the insureds made the statement knowing that the cows were not Christie cows, knowing that the cows were 'substandard' and 'inferior cows,' intending to disrupt Christie's sales to ranchers, and succeeding in reducing Christie's profits by damaging Christie's business reputation." *Id.* at *4.

The *Miranda* court inferred doubt regarding the quality of Christie's cows from the "additional allegations in the complaint stating facts beyond simple substitution of goods" because "the insureds made the statement knowing that the cows were not Christie cows, knowing that the cows were 'substandard' and 'inferior cows,' intending to disrupt Christie's sales to ranchers, and succeeding in reducing Christie's products by damaging Christie's business reputation." *Id.* at *4-6. "Although the statement (these are Christie cows) did not, standing alone, disparage the quality of the cows" implicit disparagement arose because the "Christie complaint alleges that the statement (these are Christie cows) was *understood to cast doubt upon the quality of Christie's cows . . .*". *Id.* at *5.

---

[17] *Del Monte Fresh Produce N.A., Inc.,* No. CIV.A. 06 C 1658, 2006 WL 2331144, at *7.
[18] *Miranda v. California Cap. Ins. Co.,* No. A126778, 2011 WL 1168064, at *4-8 (Cal. Ct. App. Mar. 29, 2011).

Each of those cases is analogous to the facts here because despite lack of any express statement about inferiority of RBG's products, RBG alleges that Sparkles used "RESTAURANTWARE" to exploit RBG's good will in its trademark, in the same distribution channels to the same class of purchasers, intending to disrupt and damage RBG's business. [SUF ¶¶ 30-33] The "RESTAURANTWARE" phrase casts doubt upon the quality of RBG goods and services through "any adverse reaction by the public to [Sparkles]." [SUF ¶ 30]

## III. USE IS COVERED FOR TRADEMARKED "ADVERTISING IDEA"

### A. "Use of Another's Advertising Idea"

"Advertising idea" has been interpreted to mean an idea about the solicitation of a business or promoting a product.[19] "Advertising idea" misuse is a core allegation. [SUF ¶¶ 10, 38]

Offense "f" is implicated because allegations address "use of another's advertising idea." The use of the "RESTAURANTWARE" would cause consumer confusion that products advertised by that term are approved by RBG evidences that Sparkles' advertisements of its products were misleading. [SUF ¶ 37] This follows as "Defendant products and services have been, are and will be sold in the same types of wholesale, retail and distribution channels to the same classes of purchasers as RBG's products and services have been, are and will continue to be sold." [SUF ¶¶ 40-41]

Notably, where potential "advertising ideas" were in controversy, here it is a trademarked advertising idea. [SUF ¶¶ 35-36, 37, 41] "Use" is alleged within the meaning of CNA's Policy for the "RESTAURANTWARE" trademark.[20] [SUF ¶¶ 10, 34, 38] "Use" is significantly broader than "misappropriation," including both "misuse" and "wrongful" use.[21] The Complaint alleges Sparkles' actions qualifying as "use" under the ordinary meaning of the term as "[Sparkles] has

---

[19] *See Fantasia Accessories, Ltd. v. N. Assurance Co. of Am.*, 01 CIV. 663 (AGS), 2001 U.S. Dist. LEXIS 18865, *12 (S.D.N.Y. Nov. 20, 2001) ("'[A]dvertising ideas' are thoughts about how to make the public aware of something . . . .").

[20] *See Hyundai Motor Am. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA,* 600 F.3d 1092, 1101 (9th Cir. (Cal.) 2010) (rejecting the competitor-only rule in California and the insurer's argument "that the source of the advertising idea must be from a competitor" because the Ninth Circuit could not "discern any contextual, public policy, or logical significance to who owns the legal rights to the 'advertising idea' in question.").

[21] *Ohio Cas. Ins. Co. v. Albers Med.*, No. 03-1037-CV-W-ODS, 2005 U.S. Dist. LEXIS 45675 (W.D. Mo. Sep. 22, 2005).

314004_16.docx-4/23/2025 2:48 PM

and is currently using the phrase 'RESTAURANTWARE' and/or 'RESTAURANT-WARE' and/or other related by confusingly similar marks . . . in its online advertising and marketing campaigns." [SUF ¶ 37]

Liability is also concurrently asserted implicating "advertising ideas" whose use RBG contends unfairly compete with its products whether or not the RBG "advertising ideas" are trademarked. [SUF ¶¶ 39-44] RBG focuses on Sparkles' alleged online use of "RESTAURANTWARE" as an abbreviated descriptor of its products, expanding the term to an advertising idea to imply RBG's association or approval of Sparkles' products. [SUF ¶¶ 42-43] Sparkles' advertising ideas necessarily include the identification and promotion of the Marks "RESTAURANTWARE" and/or "RESTAURANT-WARE," allegedly eliciting RBG's quality of services and products in consumers' minds.[22] [SUF ¶¶ 40-44] This use is analogous to those held actionable by a number of cases.[23]

"Of another" is implicated as RBG's Complaint alleges that Sparkles used a trademarked advertising ideas "of another" — RBG. [SUF ¶ 37] RBG contends that Sparkles' decision to market its products in a way using the "'RESTAURANTWARE' or any colorable variation thereof . . . is likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection or association of RBG's products, or to deceive consumers as to the origin, sponsorship or approval by RBG of the defendant counterfeit products" satisfies this element. [SUF ¶ 38] ("**Count V: Illinois Deceptive Trade Practices Act 815 ILCS 510/2**. . .42. Defendant's wrongful use of "RESTAURANTWARE" or any colorable variation thereof to market for cutlery, tableware

---

[22] *Am. Simmental Ass'n v. Coregis Ins. Co.,* 282 F.3d 582, 588 (8th Cir. (Neb.) 2002), citing *Advance Watch Co., Ltd. v. Kemper National Ins. Co.*, 99 F.3d 795, 801 (6th Cir. (Mich.) 1996) ("The plain and ordinary meaning of 'advertising idea" generally encompasses 'an idea for calling pubic attention to a product or business, especially by proclaiming desirable qualities so as to increase sales or patronage."); *Ohio Cas. Ins. Cloud Nine, LLC*, 464 F. Supp. 2d 1161, 1167 (D. Utah 2006) (same).

[23] *Gen. Cas Co. v. Wozniak Travel, Inc.*, 762 N.W.2d 572, 580 (Minn. 2009) (referring to a travel agency as Hobbit Travel to evoke Middle Earth); *Am. Simmental Ass'n*. 282 F.3d at 587 ("Full blood" designation for cattle was not owned by claimants); *Flodine*, No. 99 C 7466, 2001 WL 204786, at *11 (falsely advertising products as "Southwestern style" to imply Indian-made goods); *Atlapac Trading Co., Inc. v. Am. Motorists Ins. Co.*, No. CV 97-0781, 1997 U.S. Dist. LEXIS 21943, at *19-20 (C.D. Cal. Sept. 23, 1997) (promoting a mixed canola/olive oil product as containing "pure olive oil").

314004_16.docx-4/23/2025 2:48 PM

and other products food service products and services is likely to cause confusion, or to cause mistake, or to deceive customers as to the affiliation, connection or association of RBG's products, or to deceive consumers as to the origin, sponsorship or approval by RBG of the Defendants' counterfeit products.. . .**Count VII: Violation Illinois Consumer Protection Act 815 ILCS 505/2**. . . 51. Defendants' use of "RESTAURANTWARE" and/or "RESTAURANT-WARE" comprises a false description or representation of Defendants' business or products under 815 ILCS 505/2.")

In *Wozniak,* a travel company's use of term "Hobbit" to describe its travel agency capitalized on good will surrounding author Tolkien's works in its moniker "Hobbit Travel" so that alleged false advertising using that phrase fell within policy.[24]

In *Albers Med.*, the insured allegedly sold products labeled as Lipitor that were, in fact, not Lipitor.[25] The court concluded that mere use of the name constituted "use of another's advertising idea" because of the "well-developed meaning ascribed to the term" and the name itself "call[ed] public/consumer attention to its product." *Id.* As is the case here, Sparkles used RBG's developed trademarked "RESTAURANTWARE" as a banner term in its online advertisements and as a category of products to persuade consumers to click on additional links and to call attention to its cutlery products, allegedly capitalizing on the goodwill of RBG's business. [SUF ¶ 40-44]

### B.    "In Your 'Advertisement'"

The Policy defines "advertisement" as "a notice that is broadcast or published to the general public . . . about your goods, products or services for the purpose of attracting customers or supporters." [SUF ¶¶ 10, 45] Advertisements include "[n]otices that are published" include "material placed on the Internet," and the portion of a website that is about "your goods, products or services for the purposes of attracting customers" is an "advertisement." [SUF ¶¶ 10, 45]

RBG claims that Sparkles used its trademark, "RESTAURANTWARE" in advertising Sparkles products and services. [SUF ¶¶ 46-48] These statements involved actionable conduct

---

[24] 762 N.W.2d at 580.
[25] *Albers Med.*, No. 03-1037-CV-W-ODS, 2005 U.S. Dist. LEXIS 45675, at *14–15.

under offense "f."[26] RBG claims it is the owner of the ideas embodied in the "RESTAURANTWARE" features as an advertising idea as "RESTAURANTWARE" and/or "RESTAURANT-WARE" are used by both entities in their online advertisements. [SUF ¶ 46] RBG also alleges that Sparkles uses "'RESTAURANTWARE'. . . . in its online advertising and marketing campaigns" and that "[Sparkles] prominently uses "RESTAURANTWARE" as a banner in its online advertisements" and attaches a picture of the same. [SUF ¶ 48]

## IV. SLOGAN INFRINGEMENT OFFENSE (g) IS READILY IMPLICATED

### A. "RESTAURANTWARE" Is A Slogan

Illinois courts have held that a "slogan" is "a distinctive, cry, phrase, or motto of any. . . group. . .; catchword or catch phrase."[27] Slogan infringement need not be pleaded as a cause of action nor does the word "slogan" need be pled in order for coverage to arise.[28] It is of no matter that RBG did not refer to "RESTAURANTWARE" and/or "RESTAURANT-WARE" as a slogan in the Complaint and cannot support a finding that the RBG Complaint does not allege a potential claim for slogan infringement.[29] Sparkles' use of "RESTAURANTWARE" uses the phrase used as a slogan promoting a particular type of restaurant goods and services functioning as a slogan, and therefore a covered "trademarked slogan."[30] [SUF ¶¶ 49-52]

Both Sparkles and RBG use "RESTAURANTWARE" as an identifier of a unique category of goods in the restaurant industry. See, e.g., https://en.wikipedia.org/wiki/Restaurant_ware ("Restaurant ware . . . is vitrified, ceramic tableware which exhibits high mechanical strength and is produced for use in hotels and restaurants."). [SUF ¶¶ 49-52] "RESTAURANTWARE" is a

---

[26] *Wozniak Travel, Inc.*, 762 N.W.2d at 580.

[27] *Zen Design Grp., Ltd.*, 329 F.3d at 556 (quoting *Slogan*, RANDOM HOUSE UNABRIDGED DICTIONARY 1800 (2d ed. 1993)).

[28] *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.,* 611 F.3d 339, 347 (7th Cir. (Ill.) 2010) ([A]lthough many of these allegations about slogans support JLJ's trade dress claim . . . our inquiry is based on the allegations in the complaint, not the legal labels attached to them.").

[29] *Hudson Ins. Co.*, 624 F.3d at 1268-69 (citing *Zen Design*, 329 F.3d at 554-56 ("[I]t does not matter that the NFL complaint never referred to "steel curtain" as a slogan and never listed slogan infringement as a cause of action.").

[30] *Zen Design*, 329 F.3d at 556 ("'The Wearable Light' can easily be construed as a "catchword or catch phrase" used by the manufacturer to promote its product.").

314004_16.docx-4/23/2025 2:48 PM

slogan because it was a short-hand for the name of the services and goods related to cutlery, tableware and other food service goods and was therefore "descriptive." [SUF ¶ 52]

In *Sterling,* the Eastern District of Virginia concluded that a trademarked slogan claim was asserted for "infringement of . . . slogan" as it also fell within an express exception to the IP Exclusion[31] pursuant to identical policy language as that at issue here. [SUF ¶¶ 10-11] "[A] trademarked term may in some circumstances also constitute a slogan, the infringement of which may trigger an insurer's duty to defend under a policy affording advertising injury coverage. **The two terms - slogan and trademark - are neither coextensive nor mutually exclusive, and they may sometimes overlap.**" *Id.* So here, "RESTAURANTWARE" also does "double duty" as both a trademark product source identifier and a slogan (attention-getting phrase). [SUF ¶¶ 49-52] Therefore, "RESTAURANTWARE" functions as a slogan by drawing public attention through its iconic restaurant-industry indicative meaning vitrified, ceramic tableware which exhibits high mechanical strength. [SUF ¶¶ 49-52]

### B.      In Your "Advertisement"

Sparkles allegedly used online advertisements and marketing campaigns to advertise its products and services. [SUF ¶¶ 53-54] Sparkles thus made a descriptive use of the "RESTAURANTWARE" term to attract customers and supporters to its products and services in the market for cutlery, tableware and other food services.[32] [SUF ¶¶ 53-54]

Sparkles' use of "RESTAURANTWARE" is analogous to *Hudson*, 624 F.3d at 1269, where the 9th Circuit concluded that "steel curtain" was used as a slogan by the Pittsburgh Steelers where that phrase was affixed to Pittsburgh Steelers jerseys, by printing them on its own jerseys, promoting the team.

---

[31] *Travelers Indem. Co. v. Sterling Wholesale, LLC*, No. 2:12cv156, 2013 U.S. Dist. LEXIS 102223, at *19 (E.D. Va. July 19, 2013) (emphasis added).

[32] "Steel Curtain" in *Hudson*, 624 F.3d at 1268-69, "QVM" (an abbreviation for "Quality Vehicle Modification") in *Ultra Coachbuilders, Inc. v. Gen. Sec. Ins. Co.,* No. 02 CV 675 (LLS), 2002 WL 31528474, at *3 (S.D.N.Y. July 15, 2002), and a wearable flashlight with the product name "Sapphire" was advertised using the trademark "The Wearable Light" in *Zen Design*, 329 F.3d at 553–57, illustrate examples of slogans.

314004_16.docx-4/23/2025 2:48 PM

## V.    THE FOUR EXCLUSIONS CNA CITES ARE INAPPLICABLE

### A.    "Arising Out of" Exclusionary Language Is Narrowly Construed

The four asserted exclusions each fail to evaluate the distinct non-excluded conduct in light of potential liability arising under offenses "d," "f," and "g." [SUF ¶¶ 10-11, 55-64] Exclusions must be interpreted narrowly against the insurer and in favor of the insured.[33] And this includes those that adopt "arising out of" language within the exclusions.[34] CNA owed a defense under "personal and advertising" injury coverage for offenses (d), (f), and (g), and none of the four exclusions CNA asserted apply. [SUF ¶¶ 10-11, 55-64]

### B.    "Intellectual Property"

The IP exclusion excludes coverage for injury "Arising out of the infringement of . . . intellectual property rights . . . [but] this exclusion does not apply to infringement, in your "advertisement," of . . . slogan."[35] [SUF ¶¶ 10-11] Offenses "f" and "g" are express exceptions to the IP exclusion. [SUF ¶¶ 10-11, 55-57] While "d" "disparagement" under the intellectual property exclusion does not require a showing of any sort of infringement to exclude liability.[36] [SUF ¶¶ 10-11] The *Vitamin Energy* court held, "Evanston asserts that the exclusions pertain to descriptions of the insured's own products. Be that as it may, . . . it is Vitamin Energy's alleged misrepresentation of the ingredients in 5-hour Energy's products, not Vitamin Energy's own products, that creates the possibility of coverage." *Id.*

As the *MGA* court determined, "In light of the detailed explanation of what advertising injury is covered and what is excluded . . . the insured would not objectively believe that the Advertising Exclusion acted to negate all of the aforementioned possible advertising

---

[33] *Johnson Press of America, Inc. v. Northern Ins. Co. of New York,* 339 Ill. App. 3d 864, 871-872 (2003) ("Courts will liberally construe any doubts as to coverage in favor of the insured, especially when the insurer seeks to avoid coverage based on an exclusion to the policy.")

[34] *Xerox Corp. v. Travelers Cas. & Sur. Co. of Am.,* 225 A.D.3d 510, 514 (2024) ("Arising from" when used in policy exclusions should be narrowly construed under New York law); *My Choice Software, LLC v. Travelers Cas. Ins. Co. of Am.,* 823 F. App'x 510, 512 (9th Cir. (Cal.) 2020) ("Arising out of" policy language in an exclusion is narrowly construed against the insurer due its inherent ambiguity).

[35] *Allied Ins. Co. v. Bach* , No. 05 C 5945, 2007 WL 627635, at *2 (N.D. Ill. Feb. 27, 2007) ("[T]his exclusion is obviously intended to protect Allied from claims from customers who purchase the inferior golf balls and not from intellectual property claims.").

[36] *Vitamin Energy, LLC v. Evanston Ins. Co*., 22 F.4th 386, 396 (3d Cir. (Pa.) 2022).

314004_16.docx-4/23/2025 2:48 PM

coverage."[37] As in *Santa's Best*, "the intellectual property exclusion did not apply because of its exception for trademarked slogan."[38] CNA's Policy exclusion "does not apply to infringement, in your "advertisement," of . . .slogan." [SUF ¶¶ 10-11, 55-57]

### C.       "Failure to Conform"

The "Failure to Conform" exclusion excludes coverage for injury "[a]rising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement'." [SUF ¶¶ 10-11] It is of no moment as it does not address statements that question RBG's efficacy to Sparkles' advantage. [SUF ¶¶ 10-11, 58-60] Publications that evidence implicit disparagement do not depend on the accuracy of the statements made.[39] [SUF ¶¶ 30-33] Nor does the "RESTAURANTWARE" slogan "advertising idea" assert any standard concerning the "quality" or "performance" of the products advertised by the litigants. [SUF ¶¶ 49-52, 59]

The Third Circuit explained that this exclusion is inapplicable when the statement triggering coverage is directed at competitors' products.[40] Illinois courts have declined to extend the "Failure to Conform" exclusion to trademarks because trademarks are primarily concerned with identifying the source or origin of the goods, not how well the goods will perform.[41] RBG alleges that the use of "RESTAURANTWARE" signals to consumers that the products are approved by RBG, not that Sparkles promises its consumers to perform to a particular quality level.

---

[37] *See MGA Ent., Inc. v. Hartford Ins. Grp.,* No. EDCV080457DOCRNBX, 2012 WL 12893266, at *13 (C.D. Cal. Feb. 24, 2012).

[38] MCCARTHY, TRADEMARKS & UNFAIR COMPETITION §33:7 n.15 (citing *Santa's Best Craft, LLC v. St. Paul Fire & Marine Ins. Co.*, No. 04 C 1342, 2004 U.S. Dist. LEXIS 14760, at *7-8 (N.D. Ill. 2004)).

[39] *Vitamin Energy*, 22 F.4th at 386 (Claims for disparagement require a defense if they depend on a distinct basis for "injury" that does not coincide, overlap, or depend on proof of the grounds for assertion of the "Failure to Conform" exclusion.).

[40] *Vitamin Energy,* 22 F.4th at 396 (addressing analogous exclusion) ("[I]f the . . . Failure to Conform exclusions were read broadly to encompass allegations supporting a potential disparagement claim, then the exclusions would render the Policy's coverage for injury arising out of "disparaging material" a nullity, which again we doubt the parties intended").

[41] *Flodine v. State Farm Ins. Co.*, No. 99 C 7466, 2001 WL 204786, at *11 (N.D. Ill. Mar. 1, 2001) (marketing products as "authentic Indianmade" "Southwestern style" arts and crafts fell outside of the failure to conform exclusion where the marks were mainly concerned with identifying the source of origin, not a promised quality).

314004_16.docx-4/23/2025 2:48 PM

[SUF ¶ 60] If the "Failure to Conform" exclusion "were read broadly to encompass allegations supporting a potential disparagement claim, then the exclusions would render the Policy's coverage for injury arising out of 'disparaging material' a nullity, which again we doubt the parties intended."[42] In *Vitamin Energy*, "'Failure to Conform' exclusions [did not] bar coverage based on claims against Vitamin Energy for its representations about its own products' "steroid-like" performance and vitamin content." *Id.* at 395.

### D. "Knowledge of Falsity"

The "Knowledge of Falsity" exclusion excludes coverage for injury "[a]rising out of oral or written publication of material, if done . . . with knowledge of its falsity." [SUF ¶¶ 10-11, 61-62] The "Knowledge of Falsity" exclusion is no bar to a claim for potential coverage for defamation/disparagement fact allegations which support causes of action for interference with prospective economic advantage or other related unfair competition claims.[43] The *Cincinnati Ins. Co.* court held, "[t]he counterclaim is replete with allegations of deliberate misconduct by Eastern and Integrity, but these allegations do not take the case out of the basic policy. . . . It is also possible that Midwest is describing as deliberate misconduct a case in which deliberate disparagements are made even if the disparager is merely negligent with regard to their truth. **Unless he knows that his disparagements are false, he is not within the basic policy's exclusion."** *Id.* Indeed, a plethora of case authority directly rejects any finding that the "knowledge of falsity" exclusion can bar a defense for analogous facts because application of the exclusion depends upon factual determinations in the underlying action.[44] Illinois law rejects barring potential coverage by the

---

[42] *Vitamin Energy,* 22 F.4th at 396.

[43]*Cincinnati Ins. Co. v. E. Atl. Ins. Co.,* 260 F.3d 742, 746 (7th Cir. (Ill.) 2001) (emphasis added); *Utica Mutual Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 927 (N.D. Ill. (E. Div.) 2004) (Kennelly) ("Count 2 of the Mann amended complaint alleged defamation for false statements made with knowledge of their falsity. But as in [*Cincinnati Ins. Co.*, 260 F.3d 742], David could have been found liable for defamation under Count 2 without a finding that they knew the statements were false.").

[44]*Pennfield Oil Co. v. Am. Feed Indus. Ins. Co. Risk Retention Grp.,* No. 8:05CV315, 2007 WL 1290138, at *9 (D. Neb. Mar. 12, 2007) ("Determination of the applicability of [the 'knowledge of falsity'] provision must await further factual development in the underlying action. A determination that coverage is excluded by that provision would be premature at this time. Although the complaint alleges intentional and malicious acts, the record in the FDA proceedings shows that there is at least a colorable argument that Pennfield's allegedly false representations were either made without knowledge of falsity or were not false.");

314004_16.docx-4/23/2025 2:48 PM

"Knowledge of Falsity" exclusion even where intentional fact allegations are alleged.[45] Knowledge only has to be alleged for CNA's duty to defend to be triggered as that proof of conduct is not an element to prove liability under any asserted claims for liability that could establish coverage.[46] [SUF ¶¶ 10-11, 61-62]

### E. "Knowing Violation"

The "Knowing Violation" exclusion excludes coverage for injury "[c]aused by . . . the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.'" [SUF ¶¶ 10-11, 63-64] It is of no moment as it does not address the elements to prove offenses "d," "f," and "g" conduct as no knowing violation is necessary to show potential coverage under these offenses.[47] [SUF ¶¶ 10-11]

Even allegations of willful infringement do not bar a defense as that issue is limited to the issue of damages. "Likewise, a claim for damages based on unfair competition under 15 U.S.C. § 1125(A) does not require intent for a plaintiff to prevail. Assume that the case goes to trial and the trial court believes that there is no evidence of knowledge or intent on the part of the defendant, based on the pleadings in this case the court would not direct a verdict since the evidence may very well demonstrate a violation of Sections 1114 and/or 1125."[48] The purpose of this exclusion is to

---

*American Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 488 (5th Cir. (Tex.) 2004) ("Texas courts have held that even where allegations involve false statements, if liability can be imposed without proving that the false statements were made with the knowledge that they were false, the 'knowledge of falsity' exclusion will not apply to preclude coverage.").

[45] *Axiom Ins. Managers, LLC v. Capitol Specialty Ins. Corp.*, 876 F. Supp. 2d 1005, 1013 (N.D. Ill. 2012) ("Subsequent to *Del Monte,* the Illinois Appellate Court, *Am. Hardware,* 325 Ill.Dec. 483, 898 N.E.2d at 240, stated: "[s]ignificantly, alleged deliberate misconduct does not always bring a claim within an intentional conduct exclusion," and then quoted from *Cincinnati,* 260 F.3d at 746. ["Proof of deliberateness would merely be icing on the cake."]").

[46] *Intact Ins. Co. v. Comptoir Des Indes, Inc.,* Case No. 2019 CH 1308, *5 (Ill. Ch. Mar. 14, 2021) ("[W]hile the . . . Complaint . . . alleges Defendants "knowingly and willfully" Infringed on Halos' copyrights, Defendants note that Halo does not need to prove intent in order to succeed on its claim because intent is not an element of copyright infringement.. . . . At this stage, knowledge only has to be alleged, not proven, for Plaintiff's duty to defend to be triggered.").

[47] *West Bend Mut. Ins. Co. v. Ixthus Med. Supply, Inc.*, 385 Wis. 2d 580, 603, 605 (2019) (applying Wisconsin law analogous to that in Illinois) ("Despite [the underlying plaintiff's] general allegations of knowing violations, [plaintiff] could prevail on several covered advertising injury claims without establishing that [the insured] knowingly violated [plaintiff's] rights.").

[48] *Allied Ins. Co.*, No. 05 C 5945, 2007 WL 627635, at *2.

314004_16.docx-4/23/2025 2:48 PM

protect RBG from consumer claims of inferior quality products, not from IP claims. *Id.* at \*5.

*CGS Indus* concluded that allegations of alleged "willful" infringement did not suffice.[49] A Lanham Act claim does not "require [the claimant] to prove that [the insured] intended to infringe on its trademark, as such a claim does 'not require proof of intent to deceive.'" *Id.* The court's inquiry on the duty to defend "end[ed] there: as at least one of the claims in the Underlying Action did not require intent, [the insurer] was required to defend the entire action." *Id.* at 83. The *E. Mishan & Sons* court held that "while the underlying plaintiffs allege generally that Emson acted knowingly and intentionally, the actual conduct described does not rule out the possibility that Emson acted without intent to harm."[50] Were RBG to succeed on its claim for "disparagement," "advertising idea" use, or trademarked slogan infringement, proof of intent would not be required, so the Knowing Violation exclusion would be inapplicable. [SUF ¶¶ 10-11, 19-54]

For the reasons stated above, CNA must agree that Sparkles is entitled to a defense going forward and full reimbursement of any defense fees expended since the filing of the Complaint.

Dated: April 25, 2025

Respectfully submitted,

By: /s/ David A. Gauntlett

David A. Gauntlett
Illinois Federal Bar Number (90785796)
GAUNTLETT & ASSOCIATES
5 Pelican Vista Dr.
Newport Coast, CA 92657
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com
Attorney for Plaintiff,
SPARKLES GIFT & PARTY SHOP,
INC.

---

[49] *CGS Indus.*, 720 F.3d at 82-83.

[50] *See Nat'l Fire Ins. Co. v. E. Mishan & Sons, Inc.*, 650 Fed. App'x 793, 797 (2d Cir. (N.Y.) 2016).

314004_16.docx-4/23/2025 2:48 PM

15

## CERTIFICATE OF SERVICE

**I hereby certify** that on April 25, 2025, I electronically filed the foregoing document with the Clerk of this Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

Dated: April 25, 2025

Respectfully submitted,

By: /s/ David A. Gauntlett

David A. Gauntlett
Illinois Federal Bar Number (90785796)
GAUNTLETT & ASSOCIATES
5 Pelican Vista Dr.
Newport Coast, CA 92657
Telephone: (949) 553-1010
Facsimile: (949) 553-2050
info@gauntlettlaw.com

Attorney for Plaintiff
SPARKLES GIFT & PARTY SHOP,
INC.

1